UNITED STATES of America, Plaintiff,

v.

Hardy RIVERA a/k/a Billy, Defendant.

No. HCR 89–87(12).

United States District Court,
N.D. Indiana,
Hammond Division.

May 18, 1990.

Patrick Hanson, Asst. U.S. Atty., Hammond, Ind., for plaintiff.

Nick Thiros, Cohen & Thiros, Merrillville, Ind., Marc M. Barnett, Oak Lawn, Ill., for defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion to Suppress, filed by the defendant, Hardy Rivera, on March 12, 1990. On March 19, 1990, after a hearing and arguments on the Motion, the Court orally denied the defendant's Motion. The ruling denying the Motion to Suppress is VACATED only as to the money seized in the search of the defendant, Hardy Rivera's pocket; the Motion to Suppress the money seized from the defendant, Hardy Rivera's,

pocket is GRANTED, and the Court hereby ORDERS that evidence suppressed. The Motion to Suppress is DENIED in all other aspects. This Order sets forth the Court's findings and the basis for the Court's decision.

## BACKGROUND

The defendant seeks suppression of all evidence seized in the execution of a search warrant upon his residence on October 13, 1988.[1] As the search warrant was being executed, the defendant drove his pick-up truck up the driveway to his residence. The defendant was stopped as he got out of his truck, and agents searched his person and the passenger compartment of his truck. The defendant also seeks suppression of all evidence seized in the search of his person and of his truck.

The defendant argues that the documentation supporting the search warrant, namely the Affidavit of Special Agent George Karountzos of the DEA, contains information which is "allegedly suspicious in the mind of Karountzos," but "which does not rise to the level of such probable cause and/or reliable suspicion to believe that evidence of narcotics transactions could be found within the home to which the warrant was directed." The defendant argues that the search of his person and of his truck violated his constitutional rights for several reasons. The defendant maintains that he did not consent to these searches and that there was no probable cause or articulable suspicion involved in the commission of a felony or contained any evidence of a felony having been committed.

In response to the defendant's Motion, the government argues that the sufficiency of the affidavit supporting the warrant should be determined by its "four corners" and the government objects to a hearing on that issue. The government argues that a hearing, if any, on the defendant's Motion, should be limited in scope to probing the

1. The search warrant was obtained by Special Agent George Karountzos, of the Drug Enforcement Agency ("DEA"). The search warrant was executed by DEA agents and by members of a joint task force comprised of local police officers and DEA agents ("task force").

validity of the search of the defendant's person and truck.

Prior to the commencement of the hearing on March 19, 1990, the Court reviewed sufficiency of the affidavit sworn in support of the warrant by Agent Karountzos on October 13, 1988, before Magistrate Andrew P. Rodovich, United States District Court, Northern District of Indiana. This Court found that, considering the totality of the circumstances, the facts before Magistrate Rodovich provided a substantial basis for believing that the defendant's house at 11717 Wicker Avenue, Cedar Lake, Indiana, contained evidence of narcotics trafficking. *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984); *Illinois v. Gates*, 462 U.S. 213, 235–36, 238, 103 S.Ct. 2317, 2330–31, 2332, 76 L.Ed.2d 527 (1983). Accordingly, the Court limited the scope of the hearing to probing the validity of the search of the defendant's person and truck.

The defendant objected to the limited scope of the hearing, and moved orally for the Court's reconsideration of this ruling. The defendant also moved orally for the Court to order the government to divulge the names of the confidential informants who supplied the information relied upon to obtain the warrant, and the circumstances under which the informants supplied this information. The defendant cited the case of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) as the basis for these motions. The Court inquired of the defendant's counsel, Nick Thiros, whether he had any evidence to support these motions, and counsel's reply was that he had none and could supply none unless he was afforded an opportunity to speak to the confidential informants. The Court reserved ruling on the defendant's oral motion and the hearing commenced.

After hearing the testimony of Agent Karountzos, Special Agent Barry Carew of the DEA, and Task Force Officer Ted Hargrove, and the arguments of counsel, the Court made four rulings. The Court orally denied the defendant's motions to reconsid-

er limiting the scope of the hearing and for an order requiring the government to divulge the names of the confidential informants and the circumstances under which the information was given. The Court also orally denied the defendant's Motion to Suppress. The Court reserved ruling on the defendant's motion for production of a list of witnesses and written materials, also filed on March 12, 1990, and ordered the government to respond to that motion on or before March 21, 1990.[2] After these rulings were announced in open court, the defendant moved orally for a hearing on the defendant's bond status. The Court directed the defendant to file a written motion on that issue.[3] Having reviewed the record, this Court hereby VACATES the ruling which denied suppression of the money seized from the defendant's pocket, GRANTS the Motion to Suppress only as to the evidence seized from the defendant's pocket, and hereby ORDERS that evidence suppressed. In all other aspects, the ruling denying suppression of the evidence seized on October 13, 1988, is RE-AFFIRMED. This Order sets forth the Court's findings based on the hearing and the reasons underlying the Court's rulings.

DISCUSSION

*Motion to Suppress Evidence Seized In The Execution of the Search Warrant.*

In *Illinois v. Gates*, the Supreme Court held that in determining whether there is probable cause upon which to issue a warrant,

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision of whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). A magistrate's "determination of probable cause should be paid

---

**2.** This ruling will be issued by separate order.

**3.** To date, no written motion has been filed on this issue.

great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. at 237, 103 S.Ct. at 2332 (quoting *Spinelli v. U.S.*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)).

The task of a court in reviewing a magistrate's determination is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984); *Illinois v. Gates*, 462 U.S. at 237, 103 S.Ct. at 2331. The standard for review is that so long as the magistrate had before him a "substantial basis for conclud[ing]" that a search would uncover evidence of wrongdoing, the fourth amendment requires no more. *Illinois v. Gates*, 462 U.S. at 237, 103 S.Ct. at 2331 (quoting *Jones v. U.S.*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Like the magistrate who issued the warrant, the reviewing court must consider the totality of the circumstances. *Massachusetts v. Upton*, 466 U.S. at 734, 104 S.Ct. at 2088; *Illinois v. Gates*, 462 U.S. at 239, 103 S.Ct. at 2333. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Massachusetts v. Upton*, 466 U.S. at 734, 104 S.Ct. at 2089 (quoting *U.S. v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)); *Illinois v. Gates*, 462 U.S. at 238, n. 10, 103 S.Ct. at 2332, n. 10.

■ A reading of Special Agent Karountzos' affidavit, sworn before Magistrate Rodovich on October 13, 1988, supports the Magistrate's finding of probable cause upon which to issue the warrant. The affidavit contains detailed factual accounts of the narcotics trafficking activities of the defendant, Hardy Rivera, in connection with "the balloon people".[4] This information was supplied in part by confidential informants. Special Agent Karountzos affirms that Confidential Informant No. 1 ("CI–1") was arrested in possession of eight ounces of cocaine, has been working with the DEA in an undercover capacity, and has given reliable truthful information in the past which has led to at least two arrests. Special Agent Karountzos affirms that the Source of Information No. 2 ("SOI–2") is CI–1's source of narcotic supply, and that SOI–2's source of narcotics is an individual named "Billy", who lives in Indiana and runs a service station in East Chicago, Indiana.

Special Agent Karountzos affirms that he has learned by independent investigation that the defendant is also known as "Billy" and "Hardy" and runs a service station in East Chicago, Indiana, entitled "Hardy & Sons Service Station". Special Agent Karountzos also affirms that SOI–2 maintained contact with "Billy" through SOI–2's beeper, although SOI–2 never met "Billy" face-to-face. Special Agent Karountzos includes in his affidavit SOI–2's detailed description of his/her work with "Billy", which included picking up brown bags which bore SOI–2's name on them. Allegedly, these bags would be full of narcotics, which SOI–2 was to package into balloons and sometimes distribute. Special Agent Karountzos affirms that he learned from SOI–2 that after distribution, SOI–2 would place the money in the brown bag and leave it in an apartment on Torrence Avenue in Hammond, Indiana. Special Agent Karountzos further affirms that SOI–2 would later receive a beeper call from "Billy" if the money was properly found within the brown bag.

Special Agent Karountzos also included within his affidavit information obtained from Confidential Informant No. 3 ("CI–3") Special Agent Karountzos affirms that CI–3 has been working in an undercover capacity with the DEA. Special Agent Karountzos affirms that the defendant was twice observed delivering a package on Todd Avenue in East Chicago, Indiana, and

---

4. "The balloon people" is the designation given by law enforcement personnel to a group of individuals under investigation for alleged narcotics trafficking activities. The defendant, Hardy Rivera, is alleged to be a controlling member of this group.

that apartment is registered in the name of Juan Reyes, a/k/a "Jonco". Special Agent Karountzos further affirms that CI-3, while acting in an undercover capacity, purchased cocaine from that apartment, and that law enforcement officials have also purchased heroin from "Jonco" on two prior occasions.

Special Agent Karountzos also included with his affidavit information he obtained by sifting through the garbage containers located in the front of 11717 Wicker Avenue, Cedar Lake, Indiana, on October 5 and 12, 1988. Special Agent Karountzos affirms that he found, among other things: Brown paper bags with names written on them, some of which contained detailed descriptions of narcotics transactions; lists of names of individuals, at least three of which have sold narcotics to undercover law enforcement officers; money wrappers; and black plastic garbage bags which had been wrapped in duct tape, indicating a rectangular shape that, in Special Agent Karountzos' experience, would hold in excess of two kilograms of cocaine.

Reviewing the affidavit under the totality of the circumstances standard, this Court FINDS that on October 13, 1988, Magistrate Rodovich had substantial basis for concluding that the defendant's residence, 11717 Wicker Avenue, Cedar Lake, Indiana, contained evidence of narcotics trafficking. The hearsay information provided by the confidential informants was corroborated by independent police work as recently as the day before the search warrant was issued. See, *Illinois v. Gates*, 462 U.S. at 242–44, 103 S.Ct. at 2334–35 (discusses the application of the totality of circumstances analysis to the corroboration of an informant's tip by independent police work). Even standing alone, the information obtained by Special Agent Karountzos' independent investigation at least suggested that defendant, Hardy Rivera, was involved in narcotics trafficking. This information, in addition to that supplied by the informants, supported Magistrate Rodovich's finding of probable cause to believe that drugs, large sums of money, and possibly documentation of narcotics trafficking were at the defendant's house when the warrant was issued. See, *U.S. v. Percival*, 756 F.2d 600, 612 (7th Cir.1985) (officer's judgment that plastic bags in defendants' garbage had contained saleable quantities of marijuana, in addition to information supplied by an informant, constituted probable cause). Accordingly, the defendant's Motion to Suppress the evidence seized in the execution of that search warrant is DENIED.

*Motion to Conduct Franks Hearing.*

The Court, having reviewed Special Agent Karountzos' affidavit prior to the commencement of the hearing, and having reached the determination that the affidavit provided Magistrate Rodovich with a sufficient factual basis upon which to issue a warrant, limited the scope of the hearing conducted on March 19, 1990, to probing the issues surrounding the validity of the search of the defendant's person and of the defendant's vehicle on October 13, 1988. At the commencement of the hearing, the defendant objected to this ruling, and moved orally for the Court to reconsider this ruling, citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), as support for his request for a hearing on the validity of the affidavit. The Court then inquired, both prior to the commencement of testimony and at its conclusion, whether defendant's counsel, Nick Thiros, had any evidence to support his motion for a *Franks* hearing. Mr. Thiros replied on both occasions that he had none and could make no assertions as to the deliberate or reckless falsity of any statements included in the affidavit by Special Agent Karountzos until after he was provided the names of the confidential informants and information concerning the circumstances under which the information was obtained.

In *Franks v. Delaware*, the Supreme Court held that intentionally or recklessly submitting false statements in a warrant affidavit violates the Fourth Amendment. 438 U.S. 154, 164–65, 98 S.Ct. 2674, 2680–81, 57 L.Ed.2d 667 (1978); *U.S. v. Pace*, 898 F.2d 1218, 1226 (7th Cir.1990). The Court further held that in certain limited situations, a defendant may obtain a hearing to

present evidence to challenge the truth of the warrant affidavit. *Pace*, 898 F.2d at 1226; *Franks*, 438 U.S. at 155–57, 98 S.Ct. at 2676–77. To obtain an evidentiary hearing, the defendant must make a "substantial preliminary showing" that the affiant has intentionally or recklessly included a false statement in the warrant affidavit. *Pace*, 898 F.2d at 1226 (citing *Franks*, 438 U.S. at 155–57, 171–72, 98 S.Ct. at 2676–77, 2684–85).

■ To determine whether the defendant has made the requisite "substantial preliminary showing", the district court must sort through the materials the defendant submits, weighing the possible inferences these materials raise, and determine the likelihood that the affiant lied in his warrant affidavit. *Pace*, 898 F.2d at 1227. To mandate an evidentiary hearing, the defendant's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. *Franks*, 438 U.S. at 172, 98 S.Ct. at 2685. To make the requisite "substantial preliminary showing", the defendant must produce:

> Allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by statements of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 172, 98 S.Ct. at 2685. Allegations of negligence or innocent mistake are insufficient. *Id.* Furthermore, the defendant must make a substantial preliminary showing that the affiant, and not a government informant, submitted deliberate falsehoods or statements with reckless disregard for the truth of those statements. *Id.*

If the requisite preliminary showing is made, the district court must then determine whether the false statement is material, in the sense that it is necessary to find probable cause. *Pace*, 898 F.2d at 1226 (citing *Franks*, 438 U.S. at 155–57, 171–72,

98 S.Ct. at 2684–85). If these requirements are met, and if, when the material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. *Franks*, 438 U.S. at 172–73, 98 S.Ct. at 2684–85. On the other hand, if the remaining content is insufficient, the defendant is entitled under the fourth and fourteenth amendments to a hearing. *Id.* Whether the defendant will ultimately prevail at that hearing is another issue. *Id.*

■ The defendant made no proffer and has submitted no other evidence which warrants a *Franks* hearing. Moreover, the defendant failed to make a showing through the testimony adduced in the suppression hearing that Special Agent Karountzos deliberately falsified any information in his warrant affidavit, or included in that affidavit any information with reckless disregard for its truth or falsity. Additionally, defendant does not specify the portions of the warrant affidavit which he claims are false.

Defendant explains that he can make no assertion as to the deliberate or reckless falsity of any portion of the warrant until he is provided with the names of the confidential sources of information, and an opportunity to speak with them. Defendant therefore requests that the Court order the government to disclose the names of the confidential sources of information and the circumstances under which each source provided information. The government objects to being ordered to disclose this information and states that there is a serious risk of danger to the witnesses in this case. The government notes the defendant's propensity for violence, as well as that of several codefendants in this case, which the government maintains was established in pre-trial detention hearings before Magistrate Rodovich. The government further states that while the witnesses' identities have been intentionally withheld to protect their safety, outlines of each witness's expected testimony have been provided to the defendants.

In *Roviaro v. U.S.*, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), the Supreme Court held that:

> The confidentiality of informers serves an important law enforcement interest ... this interest must be balanced the defendant's interest in developing an effective defense.

The Supreme Court has acknowledged that the public has an interest in protecting a confidential informant in order to encourage the flow of information necessary in criminal prosecutions. *U.S. v. Mayomi*, 873 F.2d 1049, 1056, n. 8 (7th Cir.1989) (quoting *U.S. v. Bloomgren*, 814 F.2d 580, 584 (10th Cir.1987)). To tip the scales in the defendant's favor, the defendant must make a sufficient showing that the information regarding the informant would significantly aid the defendant; absent such a showing, disclosure is not required. *U.S. v. Andrus*, 775 F.2d 825, 841 (7th Cir.1985); *U.S. v. Diaz*, 655 F.2d 580 (5th Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); *U.S. v. Tucker*, 552 F.2d 202 (7th Cir.1977).

Here, the defendant has failed to articulate a sufficient reason which requires that the names of the confidential sources of information be disclosed. The Court FINDS that the safety of the confidential informants is a factor in this case. Additionally, the outlines of the witnesses' expected testimony should have provided the defense with sufficient information to make a substantial preliminary showing that Special Agent Karountzos deliberately or recklessly included false information in his warrant affidavit. Furthermore, the information provided by the confidential informants was corroborated by independent police investigation as recently as the day before the warrant was issued. The due process clause of the fourteenth amendment does not require the government to expose an informant's identity routinely, upon a defendant's mere demand, when there is ample evidence that the informant was reliable and his information credible. *Franks*, 438 U.S., at 171, 98 S.Ct. at 2684 (citing *McCray v. Illinois* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967)). Under these circumstances, the Court will not order the government to disclose the identities of the confidential sources of information or the circumstances under which each gave information.

The defendant has not made the requisite preliminary showing, and a mere desire to cross-examine Special Agent Karountzos, without more, does not support granting him a *Franks* hearing. *Pace*, 898 F.2d at 1228 (citing *Franks*, 438 U.S. at 172, 98 S.Ct. at 2684). To the extent the defendant desires to examine or cross-examine the informants as to the truth or falsity of the information they allegedly provided Agent Karountzos, his reliance on *Franks* is misplaced. See *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684 ("the deliberate falsity or disregard whose impeachment is permitted today, is only that of the affiant, not of any governmental informant.") Accordingly, this Court will not reconsider its denial of a *Franks* hearing in this case.

*Motion to Suppress Evidence Seized in Search of the Defendant's Person and Truck.*

At the suppression hearing, the following facts were adduced:

> On October 13, 1988, Special Agent George Karountzos appeared before Magistrate Andrew P. Rodovich. Agent Karountzos swore to an affidavit in support of his request for a search warrant for the premises, 11717 Wicker Avenue, Cedar Lake, Indiana. Magistrate Rodovich determined that the request was based on probable cause and issued to Agent Karountzos a search warrant for the premises, 11717 Wicker Avenue, Cedar Lake, Indiana. This search warrant authorized Agent Karountzos to search for: "Evidence, fruits, instrumentalities of Title 21, United States Code, § 841, including but not limited to cocaine, heroin, and other controlled substances and cash and various drug paraphernalia." On October 13, 1988, six to ten law enforcement officers from the DEA and the Task Force executed this search warrant on the premises located at 11717 Wicker Avenue, Cedar Lake, Indiana. This premises is the residence of the defendant, Hardy Rivera.

Among those present were Special Agent Karountzos, Special Agent Barry Carew, and Task Force Officer Ted Hargrove. Special Agent Karountzos has three and one-half years previous experience as a police officer with the Highland, Indiana Police Department, and has two years experience as a DEA Special Agent. Special Agent Carew has seventeen years experience as a DEA Agent. Officer Hargrove is a police officer with the Hammond, Indiana Police Department, and has been assigned to the Task Force for two and one-half years.

The search warrant was executed on 11717 Wicker Avenue, Cedar Lake, Indiana, on October 13, 1988, at approximately 6:30 P.M.

Some of the agents formed a "perimeter" around the house to secure it so that no one could come in and no one could leave while the warrant was being executed. Other agents remained inside the house to search it.

The defendant, Hardy Rivera, was not present when the search began. The only persons in the house when the search began were Mr. Baker, who is the defendant's brother-in-law, and some of the defendant's children.

Approximately one-half hour after the search began, all of the agents congregated inside the house to complete the search, and Agent Carew and Officer Hargrove left the house to go to another location.

As Agent Carew and Officer Hargrove began to drive down the driveway, away from 11717 Wicker Avenue, the defendant turned into the driveway and began to drive toward 11717 Wicker Avenue. Agent Carew had previously observed the defendant driving that vehicle, a black pick-up truck. Agent Carew recognized the defendant and recognized the truck.

The defendant drove around the car driven by Agent Carew. Agent Carew backed his vehicle up to where the defendant stopped his truck.

The defendant got out of the pick-up truck through the driver's side door and did not close that door. Agent Carew and Officer Hargrove announced that they were police officers and stopped the defendant at the rear of the pick-up truck, approximately eight to ten feet from the open driver's side door.

Both Agent Carew and Officer Hargrove could see a brown paper bag on the floor of the cab of the defendant's pick-up truck. This bag was partially under the driver's seat. Officer Hargrove could not see the contents of the bag from his vantage point. Officer Hargrove began to pat the defendant down for weapons while Agent Carew approached the pick-up truck.

Officer Hargrove felt an object in the defendant's right front pants pockets, which did not feel like a weapon, but which Officer Hargrove believed might contain contraband or a large sum of money. Officer Hargrove removed the object, which was approximately $1700.00 folded together, from the defendant's right front pants pocket.

As Agent Carew approached the open driver's side door of the defendant's truck, he could see that the brown paper bag, which was partially under the driver's seat, was full of money. Agent Carew removed the brown paper bag from the truck. Agent Carew also saw a gym bag in the cab of the truck. Agent Carew searched this gym bag, found only dirty clothes in it, and left it in the truck.

The defendant did not consent to the search of his person, nor to the search of his truck. The defendant did not move toward the truck while he was stopped.

Agent Carew and Officer Hargrove walked the defendant into his house and gave the bag full of money and the money from the defendant's right front pants pocket to Agent Karountzos. The defendant was not placed under arrest.

It is common procedure for law enforcement officers to secure the outside of the premises being searched pursuant to a warrant. It is also common procedure to search an individual before allowing that individual to enter the premises while the search is being conducted.

The search warrant was obtained and executed as a part of an on-going investigation of the defendant and of others believed to be engaged in narcotics trafficking activity. These individuals are commonly referred to by investigators as "the balloon people".

The practice of the balloon people, of which the defendant and co-defendant, Julio Abreu, a/k/a Blackie, are alleged to be a part, is to write the name of the person who collects money on one of the bills.

The brown paper bag seized in the search of the defendant's truck is significant because during the investigation of the balloon people, other bags had been found with names on them. Agent Carew had observed the defendant "making the rounds" in his pick-up truck to collect money from other individuals believed to be a part of the balloon people. The defendant was also observed carrying packages into known drug locations.

The defendant also runs a service station located in East Chicago, Indiana, named "Hardy & Sons Service Station".

The brown bag seized from the defendant's truck did not bear any names. One bill contained within the bag bears the name "Blackie". "Blackie" is the nickname of co-defendant, Julio Abreu, who is alleged to be involved in narcotics trafficking activity with the defendant and the balloon people.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court first addressed the validity of a breach investigatory stop under fourth amendment principles. This Court FINDS that *Terry* and its progeny apply to the search of the defendant's person and vehicle in the present situation. *Terry*, 392 U.S. 1, 88 S.Ct. 1868; *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

A *Terry* stop is a brief investigatory detention which allows law enforcement personnel the opportunity to either verify or dispel their "suspicions that a person has been, is, or is about to be engaged in criminal activity." *U.S. v. Boden*, 854 F.2d 983, 992 (7th Cir.1988) (citing *Terry*, 392 U.S. 1, 88 S.Ct. at 1878–80, 1883, 20 L.Ed.2d 889 (1968)). To justify a brief limited intrusion under *Terry*, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants that intrusion." *Boden*, 854 F.2d at 992 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880). Additionally, due weight must be given to the specific reasonable inferences which an officer is entitled to draw from the facts in light of his experience. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. To determine whether an officer's suspicion of criminal activity is reasonable, a court must evaluate the totality of the circumstances. *Boden*, 854 F.2d at 992 (citations omitted).

Upon reviewing the record, including the testimony adduced in the hearing, this Court FINDS that the testimony of Special Agent Karountzos, Special Agent Carew, and Officer Hargrove was credible. In the instant case, Special Agent Carew and Officer Hargrove were on the defendant's premises for the purpose of executing a search warrant. This search warrant was issued upon probable cause to believe that evidence of narcotics trafficking activity, including but not limited to cocaine, heroin, and money, could be found on those premises at that time. The testimony adduced during the hearing indicated that a number of law enforcement personnel were still within the defendant's residence when the defendant began to drive up the driveway toward the house.

Agent Carew testified that, as the defendant drove past him and toward the house, Agent Carew recognized both the defendant and the pick-up truck he was driving from previous surveillance. Agent Carew testified that this recognition was based in part on surveillance of the defendant using this pick-up truck to "make the rounds", meaning that the defendant had been observed driving the pick-up truck to various locations, to which he delivered packages and picked up money, and from which undercover informants and the law enforcement personnel had purchased narcotics on

several occasions. Furthermore, the testimony adduced during the hearing indicates that after the defendant was patted down and the money was removed from his pocket and from his truck, Agent Carew and Officer Hargrove escorted the defendant into his residence and shortly thereafter, all law enforcement personnel left the defendant's residence. Based on these facts, this Court FINDS that a brief investigatory stop of the defendant was conducted, and the defendant was not under arrest.

Here, given the previous investigation and surveillance that had been conducted, a *Terry* investigative stop and frisk of the defendant was justified from the outset. First, maintaining the safety of the law enforcement personnel inside the residence conducting the search requires that officers securing the outside of the premises take steps to insure that no individual who enters the residence while the search is being conducted while armed with a firearm or any other type of weapon. An officer need not be absolutely certain that the individual he is about to frisk is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 28, 88 S.Ct. at 188 (citations omitted).

Second, many districts have recognized that frequently where large quantities of narcotics are involved, firearms are also present. See *U.S. v. Gilliard*, 847 F.2d 21 (1st Cir.1988) (firearms are the "tools of the trade of drug traffickers"); *U.S. v. Pajari*, 715 F.2d 1378 (8th Cir.1983) (frisk of stopped suspected major narcotics dealer proper); *U.S. v. Post*, 607 F.2d 847 (9th Cir.1979) (not unreasonable to suspect that a dealer in narcotics might be armed); *U.S. v. Oates*, 560 F.2d 45 (2nd Cir.1977) (firearms are the "tools of the trade" of such persons); *U.S. v. Santana*, 485 F.2d 365 (2nd Cir.1973) (noting "it would not be unreasonable for a policeman to assume that a man believed to be one of the top narcotics violators in the New York area would be carrying guns or would be otherwise violent"). Here, the actions taken by Agent Carew and Officer Hargrove in stopping the defendant and patting him down easily fall within the bounds of a *Terry* stop as necessary to protect not only their personal safety and that of the law enforcement personnel still inside the defendant's residence, but also to maintain the status quo while seeking more information. *U.S. v. Boden*, 854 F.2d 983, 993 (7th Cir.1988) (citations omitted).

Agent Carew and Officer Hargrove both testified that the defendant was standing at the rear of the pick-up truck approximately eight feet from the open driver's side door when stopped. Both Agent Carew and Officer Hargrove testified that when they initially stopped the defendant, both could see an open paper bag lying on the floor of the cab of the pick-up truck, partly underneath the driver's seat. Officer Hargrove testified that he remained with the defendant while Agent Carew searched the passenger compartment of the defendant's pick-up truck.

Officer Hargrove testified that in frisking defendant, he felt an object in the defendant's right front pants pocket which he believed was either money or contraband. Officer Hargrove testified that he then removed the object, which he discovered to be approximately $1700.00 folded together. Officer Hargrove testified that he then carried the money inside as he and agent Carew, who had finished searching the truck, escorted the defendant into his residence.

While Officer Hargrove's actions in stopping the defendant and conducting a pat-down search for weapons were reasonable under *Terry*, Officer Hargrove's removal of the quantity of money from the defendant's pocket and subsequent seizure of this money as contraband raises a different issue. The search for weapons approved by *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. *U.S. v. Santillanes*, 848 F.2d 1103, 1109 (10th Cir. 1988) (quoting *Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968)). Furthermore, the search for weapons should be a limited intrusion. *Santillanes*, 848 F.2d at 1109. If the real

aim of the search was the discovery or preservation of contraband, rather than the immobilization of weapons, the intrusion is not authorized by *Terry* or *Long.* *U.S. v. Williams,* 822 F.2d 1174, 1179 (D.C.Cir. 1987) (citing *U.S. v. Gonzalez,* 763 F.2d 1127, 1130, n. 1 (10th Cir.1985)).

Officer Hargrove's seizure of the money after having dispelled his reasonable suspicion that the defendant was armed exceeded the scope of a permissible frisk. Clearly, Officer Hargrove was well within the bounds of a permissible frisk in patting the defendant down to find weapons, both for his own protection and safety and that of Agent Carew and the law enforcement personnel still inside the defendant's residence. However, nothing in *Terry* can be understood to allow any search for anything but weapons. *Santillanes,* 848 F.2d at 1109 (quoting *Ybarra v. Illinois,* 444 U.S. 85, 92–94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979)). Therefore, the $1700.00 seized from the defendant's pocket must be suppressed. Where the search is not reasonably limited in scope to the accomplishment of the only goal which might conceivably justify its inception—the protection of the officers by disarming a potentially dangerous man—the contraband seized in a search of the defendant must be suppressed. *Williams,* 822 F.2d at 1179 (quoting *Sibron,* 392 U.S. at 65, 88 S.Ct. at 1894). Accordingly, the ruling of this Court announced from the bench at the conclusion of the hearing on March 19, 1990, is vacated only to the extent it denies the Motion to Suppress the money seized from the defendant's pocket.

■ The search of the passenger compartment of the defendant's pick-up truck was valid under several theories. First, Agent Carew's search of the passenger compartment of the pick-up truck was valid as a search incident to a *Terry* stop. It is not disputed that when the defendant was stopped, he was approximately eight feet away from the open driver's side door of the pick-up truck. Given the totality of the circumstances, it is not unreasonable that Agent Carew and Officer Hargrove had an articulable suspicion that if the pick-up

truck contained a weapon, that there was a possibility that the defendant could re-enter it to obtain control of such a weapon. A *Terry* investigation at close range requires an officer to make a quick decision as to how to protect himself and others from possible danger, and officers are not required to "adopt alternative means to insure their safety in order to involve the intrusion involved in a *Terry* encounter." *U.S. v. Boden,* 854 F.2d at 994 (quoting *Long,* 103 S.Ct. at 3482 and *Terry,* 88 S.Ct. at 1883).

Secondly, the search of the defendant's truck was within the scope of the search warrant issued for his premises. Magistrate Rodovich issued a search warrant for the defendant's premises on the basis of a showing of probable cause to believe that at the time the warrant was issued evidence of narcotics trafficking activity, including but not limited to cocaine, heroin, and money, could be found on the premises. Additionally, Agent Carew testified that surveillance of defendant's activities revealed that the defendant had been observed driving this pick-up truck to and from known drug locations, to which the defendant was observed delivering packages and from which undercover informants and law enforcement personnel had purchased narcotics on previous occasions. While the better practice would have been to include a description of the defendant's vehicle in the warrant, such a practice is not mandated in every instance by the fourth amendment. *U.S. v. Percival,* 756 F.2d at 612 (a search warrant authorizing a search of a particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on the premises) (citations omitted). Agent Carew testified that he had seen the defendant driving this pick-up truck on prior occasions, and that the defendant was stopped after having driven the pick-up truck up the driveway toward his residence. Thus the facts adequately demonstrate that the defendant exercised sufficient dominion and control over the pick-up truck to permit its search pursuant to the

search warrant for his premises. *Percival,* 756 F.2d at 613.

The seizure from the cab of the defendant's pick-up truck of the brown bag filled with money, the amount of which was later determined to be approximately $58,000.00, is also valid under the plain view exception to the warrant requirement. Both Officer Hargrove and Agent Carew testified that when they initially got out of their car and approached the defendant, both could see inside the cab of the pick-up truck through the open driver's side door. Each also testified to seeing a brown bag which appeared to be full of something on the floor of the cab, partially under the driver's seat. While Officer Hargrove testified that from his vantage point he could not see the contents of the bag, Agent Carew testified that from his vantage point he could see that the bag was full of money.

Probable cause is required to justify a plain view seizure. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987). A warrantless seizure of an item in plain view passes constitutional muster where there has been a prior valid intrusion, the evidentiary nature of the item is immediately apparent, and the discovery is inadvertent. *Coolidge v. New Hampshire,* 403 U.S. 443, 446, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). "Immediately apparent" does not mean that the officer must "know" that seized items are contraband or evidence of crime. Rather, "probable cause to associate the property with criminal activity" will suffice. *Texas v. Brown,* 460 U.S. 730, 741, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 513 (1983) (plurality opinion) (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980)).

In this case, Agent Carew and Officer Hargrove were lawfully on the premises for the purpose of executing a search warrant. The search warrant was based on a previous demonstration of probable cause to believe that contraband and other evidence of narcotics trafficking activity could be found on the premises. Furthermore, large quantities of money were one of the items they were searching for and had obtained a search warrant for. Additionally, the testimony adduced in the hearing indicates that it is a practice of "the balloon people" to package the money allegedly obtained from narcotics trafficking activity in brown bags, and Special Agent Karountzos had included in his warrant affidavit that brown bags, along with money wrappers and evidence of narcotics trafficking activity had been found in the defendant's garbage. Therefore, there was probable cause to believe that the $58,000.00 stuffed in the brown paper bag found on the floor of the defendant's pick-up truck was associated with criminal activity when he drove that pick-up truck up to his residence and parked outside. Accordingly, the defendant's Motion to Suppress the money found in the brown bag on the floor of the cab of his pick-up truck is DENIED.

CONCLUSION

Based on the foregoing, this Court hereby ORDERS the following:

(1) The ruling to deny the defendant's Motion to Suppress the evidence seized in the search of his person on October 13, 1988 is VACATED. The defendant's Motion to Suppress the Evidence seized in the search of his person on October 13, 1988 is GRANTED, and that evidence is ORDERED suppressed.

(2) In all other aspects, the findings and rulings of this Court, announced from the bench on March 19, 1990 are expressly reaffirmed.