

FILED

Sep 28 2018, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Lawrence Lucas,<br>*Appellee-Defendant.* | September 28, 2018<br><br>Court of Appeals Case No.<br>18A-CR-92<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Randy J. Williams,<br>Judge<br><br>Trial Court Cause No.<br>79D01-1704-F4-20 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, State of Indiana (State), appeals the trial court's suppression of evidence obtained after a search of the home and garage of Appellee-Defendant, Lawrence Lucas (Lucas).

We reverse and remand for further proceedings.

# ISSUE

The State presents one issue, which we restate as: Whether the trial court's grant of Lucas' motion to suppress is contrary to law.

On the morning of May 11, 2016, Sergeant Matthew Gard (Sergeant Gard) of the Lafayette Police Department took a report from Bernard Brooks (Brooks) regarding an assault and theft. Brooks had been fighting with Lucas' mother, Anita, the previous evening and had gone to Lucas' home to sleep. Brooks fell asleep on Lucas' floor, only to be awakened by Anita hitting him on the head with an aluminum baseball bat and by Lucas' sister, Sharmeka, hitting him with her fists. Brooks was injured in the fracas and fled the home, leaving behind a jacket and a hat. Brooks also reported to Sergeant Gard that Anita and Sharmeka had taken his cell phone and $60 from his pocket.

Based on Brooks' report, Sergeant Gard procured a search warrant for Lucas' home which provided for a search in relevant part as follows:

A yellow two story home with an attached two car garage with brick siding on the first level and yellow siding on the second floor, located at 3023 Yorktown Court, Lafayette, Indiana[,]

and to diligently search for, seize and forensically examine:

Clothing, [a] baseball bat, a cellular phone, U.S. currency, blood evidence or any evidence relating to an assault and/or theft occurring with said residence.

(Appellant's Appendix Vol. II, p. 42).

[6] Upon executing the search warrant, Sergeant Gard found blood about the home and a bloody baseball bat which matched the description Brooks had given him in the kitchen. While searching, Sergeant Gard went through a door located in the living room and into the attached garage. A black vehicle was parked inside the garage. Next to the vehicle on the ground, Sergeant Gard found a bloodied jacket matching the description of Brooks' jacket. Sergeant Gard looked inside the black vehicle and saw a large mound in the back seat which had been covered by a blanket. Sergeant Gard was concerned that objects could be concealed under the blanket, so he reached inside one of the vehicle's partially-opened windows and moved the blanket, revealing a large paper bag containing what Sergeant Gard suspected through his training and experience was synthetic marijuana.

[7] Based on the discovery of the suspected synthetic marijuana, as well as a safe, "shake" on the garage floor, and a large cardboard box in the garage which bore the label "California Herb Company," Sergeant Gard stopped his search

and procured a second search warrant authorizing a search of the home and the black vehicle for evidence of narcotics activity. (Transcript Vol. II, p. 15). That search yielded additional evidence.

[8] On April 20, 2017, the State filed an Information charging Lucas with one Count of unlawful possession of a firearm by a serious violent felon, a Level 4 felony; one Count of dealing in a synthetic drug or synthetic drug lookalike substance, a Level 6 felony; one Count of possession of a synthetic drug or synthetic drug lookalike substance, a Class A misdemeanor; and one Count of maintaining a common nuisance, a Level 6 felony.

[9] On October 16, 2017, Lucas filed a motion to suppress in which he argued that the evidence procured from the search exceeded the scope of the warrant because "there was only bare speculation by Officer Gard regarding what was under the blanket." (Appellant's App. Vol. II, p. 56). On November 27, 2017, the trial court held a hearing on Lucas' motion. On December 20, 2017, the trial court entered its order granting Lucas' motion to suppress, ruling in relevant part "that the officer's entry into the vehicle and moving of the blanket exceeded the scope of the warrant and all evidence seized as a result of said action is suppressed." (Appellant's App. Vol. II, p. 62).

[10] The State now appeals. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

[11] We begin by noting that Lucas did not file a brief responding to the State's appeal. As such, the State need only establish *prima facie* error to merit reversal

of the trial court's ruling in Lucas' favor. *State v. Costas*, 552 N.E.2d 459, 462 (Ind. 1990). The State appeals following the trial court's grant of a motion to suppress, which effectively terminated the prosecution of this case. Because the State appeals from a negative judgment, it bears the burden to show that the trial court's ruling was contrary to law. *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017). When reviewing a trial court's suppression ruling, we determine whether the record contains substantial evidence of probative value that supports the trial court's decision. *Id*. "We evaluate the trial court's findings of fact deferentially, neither reweighing the evidence nor reassessing the credibility of the witnesses." *Id*. However, we review the trial court's conclusions of law *de novo*. *Id*.

[12] Lucas argued before the trial court that the search of the black vehicle exceeded the scope of the warrant because Sergeant Gard's act of moving the blanket in the vehicle was an extension of the warrant to a place where none of the objects listed in the warrant could have been found. Lucas contended that Sergeant Gard could only speculate what was under the blanket, and, therefore, his act of moving the blanket was unreasonable. The State counters that the search warrant permitted a search of the garage and that, therefore, any containers, including the black vehicle located there, were also searchable under the parameters of the warrant.

[13]     The Fourth Amendment to the United States Constitution[1] requires that a search warrant describe with specificity the place to be searched and the items sought. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). If a search exceeds the scope of the warrant, it is unconstitutional. *Sidener v. State*, 55 N.E.3d 380, 383 (Ind. Ct. App. 2016). Our United States Supreme Court has provided guidance on the parameters of a warranted search:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found . . . . When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*United States v. Ross*, 456 U.S. 798, 820-21 (1982) (footnote omitted). It appears that our Indiana state courts have not decided the precise issue of whether the Fourth Amendment permits an officer who has procured a search warrant for a

---

[1] We do not address whether the search at issue here was permitted under the Indiana Constitution, as Lucas did not develop a separate state constitutional analysis below, Lucas has not filed an appellate brief, the trial court did not specify the constitutional basis for its order granting Lucas' motion to suppress, and, on appeal, the State does not proffer any separate state constitutional analysis. (Appellant's Br. p. 14 n.1).

home and garage to also search any vehicles found on the premises. Although we are not bound by federal authority, we may look to it for guidance in the absence of state law. *Stonger v. Sorrell*, 776 N.E.2d 353, 355-56 (Ind. 2002).

[14] The State draws our attention to *United States v. Percival*, 756 F.2d 600 (7th Cir. 1985). While executing a search warrant for Percival's home and attached garage, agents found a vehicle in the garage. *Id*. at 605. The agents unlocked the trunk and found a suitcase containing a large amount of illegal drugs. *Id*. Percival argued that the search of the vehicle located in his garage exceeded the scope of the search warrant and that a vehicle should not be viewed the same manner as other personal items found in a home because a vehicle has a lesser connection to the premises than other household items such as furniture or cabinets. *Id*. at 612.

[15] In rejecting that argument, the *Percival* court noted that while a vehicle is less fixed than a closet or cabinet, it is "no less fixed than a suitcase or handbag found on the premises, both of which can readily be searched under *Ross* if capable of containing the object of the search." *Id*. Observing the trend in other jurisdictions upholding such searches, the *Percival* court held that "a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises." *Id*. *Percival* has subsequently enjoyed support in our federal circuit and district courts. *See e.g.*, *United State v. Evans*, 92 F.3d 540, 543 (7th Cir. 1996) (search of trunk of vehicle in attached garage pursuant to warrant for house "with detached garage"), *cert. denied* 519 U.S. 1020 (1996); *see also United*

*States v. Rivera*, 738 F. Supp. 1208, 1218 (N.D. Ind. 1990) (search of truck in driveway pursuant to warrant for home's premises).

[16]　We recognize that Hoosiers have a heightened expectation of privacy in their vehicles. *See Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995) ("With respect to automobiles generally, it may safely be said that Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion."). However, we find the reasoning of *Percival* to be persuasive and hold that, under the Fourth Amendment, a search warrant authorizing a search of a particularly described premises permits the search of vehicles owned or controlled by the owner of, and found on, the premises.

[17]　Here, Sergeant Gard procured a search warrant for Lucas' "two story home with an attached two car garage" to search for "[c]lothing, [a] baseball bat, a cellular phone, U.S. currency, blood evidence or any evidence relating to an assault and/or theft occurring with said residence." (Appellant's App. Vol. II, p. 42). When Sergeant Gard entered the garage, he had not yet located the cell phone or the $60 Brooks had reported stolen. Sergeant Gard was permitted to search the black vehicle and, in the process, to lift the blanket covering the large mound located in the back seat, because the vehicle and the mound were capable of containing those objects. *Ross*, 456 U.S. at 820-21; *Percival*, 756 F.2d at 612. The State has shown that the trial court's ruling granting Lucas' motion to suppress was contrary to law.

# CONCLUSION

[18] Concluding that the search of the vehicle in Lucas' garage did not unconstitutionally exceed the scope of the search warrant, we reverse and remand for further proceedings consistent with this opinion.

[19] Reversed and remanded.

[20] Vaidik, C. J. and Kirsch, J. concur