FILED
May 29 2019, 10:20 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



**ATTORNEY FOR APPELLANT**

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian E. Hardin,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | May 29, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2629<br><br>Appeal from the Morgan Circuit<br>Court<br><br>The Honorable Matthew G.<br>Hanson, Judge<br><br>Trial Court Cause No.<br>55C01-1709-F2-1851 |

**Brown, Judge.**

[1] Brian E. Hardin appeals his conviction for dealing in methamphetamine as a level 2 felony. He raises one issue which we revise and restate as whether the trial court abused its discretion in admitting evidence obtained from a vehicle located on the premises of a residence for which a search warrant was issued. We affirm.

## Facts and Procedural History

[2] In September 2017, Indiana State Police Detective Joshua Allen was involved in an investigation into the finance and delivery of methamphetamine in Morgan County and surrounding counties. The main target of the investigation was Jerry Hall. Intercepted communications from a wiretap brought law enforcement's attention to Hardin.

[3] On September 26, 2017, Detective Allen completed an affidavit in support of a search warrant for Hardin's residence and asserted in part:

> Surveillance was able to identify Hardin going to and from [Hall's] residence. Surveillance was able to identify Hardin going to 5426 Collett Drive East Camby, Morgan County, Indiana. Hardin's vehicle was also seen parked at 5426 Collett Drive East Camby, Indiana in the early morning hours of 09.26.20117 [sic]. This officer was able to identify this vehicle as Hardin's through the Indiana Bureau of Motor Vehicles Information and Hardin has been seen driving the vehicle.

> On 09/25/2017, Brian Hardin had conversations with Jerry Hall in reference to dealing methamphetamine. Hardin indicated he was out dealing methamphetamine and picking up money. Hardin's cellular telephone location put him in the area of Martinsville Morgan County Indiana during this conversation.

> Brian Hardin has had several intercepted telephone calls reference to him being involved in the conspiracy to deal methamphetamine with Jerry Hall.

State's Suppression Hearing Exhibit 2.

The court issued a search warrant, which states in part:

> You are therefore AUTHORIZED AND ORDERED, in the name of the State of Indiana, with the necessary and proper assistance, to enter into (upon) the following described residence, to-wit: single story gray sided residence, with a partial brick front, and attached garage, and partially covered front porch with the numeric 5426 attached located at 5426 Collett Drive East, Camby, Morgan County, Indiana . . . .

State's Suppression Hearing Exhibit 1.

Detective Allen, Indiana State Trooper Kent William Rohlfing, Detective Matt Fleener, and Indiana State Trooper John Patrick, arrived at Hardin's residence to execute the search warrant around 11 p.m. on September 26, 2017. Officers initially cleared the residence for subjects and then began searching for evidence and found plastic bags, heat seal bags that contained a crystal substance, digital scales, syringes, and two pieces of paper consistent with what Detective Allen knew to be a "pay and owe sheet." Transcript Volume II at 118. At some point, Hardin's girlfriend arrived at the residence and indicated that Hardin was picking up food at McDonald's. Trooper Patrick and Detective Allen left in separate vehicles to attempt to locate Hardin.

[6] Trooper Rohlfing observed Hardin arrive in a pickup truck and heard the garage door open at the same time as a vehicle pulled into the driveway. Trooper Rohlfing heard the door open and heard Detective Fleener identify himself as State Police and tell Hardin to show his hands. Hardin backpedaled in a quick manner, threw two McDonald's cups in the air, tripped, fell, kicked his arms and legs, and scooted along the ground. Detective Fleener "was able to get on top of [Hardin], basically in a full mount position," and Hardin continued to scream and kick. *Id.* at 74. Hardin eventually was able to spin to his stomach and raise himself off the ground. Trooper Rohlfing, who had injured his shoulder gaining entry to the residence, placed his foot on the back of Hardin's head and pushed him straight to the ground, stopping the fight.

[7] Trooper Rohlfing called Trooper Patrick and Detective Allen to inform them that Hardin was in custody at the residence, and Trooper Patrick and Detective Allen returned to the residence. Meanwhile, other officers located approximately $327,000 in cash and over a pound of methamphetamine in executing the search warrant on Hall's residence. Detective Allen performed a search of Hardin's vehicle and found more than 100 grams of methamphetamine in a bag underneath the driver's seat.

[8] On September 28, 2017, the State charged Hardin with Count I, dealing in methamphetamine as a level 2 felony, and Count II, possession of methamphetamine as a level 3 felony. On November 2, 2017, the State alleged that Hardin was an habitual offender. On April 17, 2018, Hardin filed a motion to suppress all evidence seized in the search of his home because "the search

went beyond the scope of items and areas allowed to be searched by the Search Warrant . . . and a search of the vehicle which [he] had driven to the scene was searched without probable cause or authorization by a search warrant." Appellant's Appendix Volume II at 21.

[9] On July 11, 2018, the court held a hearing on Hardin's motion at which Detective Allen testified. On July 18, 2018, the court denied Hardin's motion to suppress. Specifically, the court's order found that Hardin's vehicle "rested in the driveway and was therefore on the curtilage of the residence" and that "the search warrant that only described the residence of [Hardin] authorized the search of the vehicle while it remained within the curtilage of the residence." *Id.* at 61. The court also found that the automobile exception applied to the search of the vehicle.

[10] On September 11, 2018, the court held a bench trial. Hardin's counsel objected to the admission of the evidence found in his vehicle and argued a violation of the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution, and the court overruled the objection. The court found Hardin guilty of Counts I and II, and the State dismissed the habitual offender enhancement. The court found that Count II merged with Count I, and sentenced Hardin to twenty-two years executed.

## *Discussion*

[11] The issue is whether the trial court erred in admitting certain evidence. Although Hardin originally challenged the admission of the evidence through a

motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Id.*

[12] In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Id.* If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette*, 14 N.E.3d at 40 n.1.

[13] Hardin raises arguments under: (A) the Fourth Amendment of the United States Constitution; and (B) Article 1, Section 11 of the Indiana Constitution.

A. *Fourth Amendment*

[14] Under the Fourth Amendment to the U.S. Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. The United States Supreme Court has held:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*United States v. Ross*, 456 U.S. 798, 820-821, 102 S. Ct. 2157, 2170-2171 (1982).

[15]    In *Sowers v. State*, 724 N.E.2d 588, 590 (Ind. 2000), *cert. denied*, 531 U.S. 847, 121 S. Ct. 118 (2000), the Indiana Supreme Court addressed "whether the Fourth Amendment permits police officers who secure a lawful warrant for a residence at a specific address to search a tent in the backyard of that dwelling." The Court observed that the United States Supreme Court had explained that the purpose of the requirement in the Fourth Amendment prohibiting the issuance of any warrant except upon particularly describing the place to be searched and the persons or things to be seized was the prevention of general or

wide-ranging exploratory searches. 724 N.E.2d at 589 (citing *Maryland v.*
*Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013 (1987)). The Court noted that "[i]t is
sufficient that a warrant describe the place to be searched in terms that an
officer 'can with reasonable effort ascertain and identify the place intended.'"
*Id.* (quoting *Steele v. United States*, 267 U.S. 498, 503, 45 S. Ct. 414 (1925)). The
Court held:

> In *Ross*, the Supreme Court held that "a warrant that authorizes
> an officer to search a home for illegal weapons also provides
> authority to open closets, chests, drawers, and containers in
> which the weapon might be found." 456 U.S. at 821, 102 S. Ct.
> 2157. We agree with the courts that conclude the same
> reasoning applies to the yard and outbuildings of a single
> residence. As the Ninth Circuit put it:
>
>> We are unable to identify a privacy based reason why this
>> principle should be restricted to the inside of a residence and
>> stop at the residence's threshold to the backyard, or
>> curtilage. If a search warrant specifying only the residence
>> permits the search of 'closets, chests, drawers, and
>> containers' therein where the object searched for might be
>> found, so should it permit the search of similar receptacles
>> located in the outdoor extension of the residence . . . .
>
> *United States v. Gorman*, 104 F.3d 272, 275 (9th Cir. 1996). The
> Ninth Circuit further observed, correctly as far as we can
> determine, that "[e]very published opinion addressing the issue
> has concluded that a warrant authorizing the search of a
> residence automatically authorizes a search of the residence's
> curtilage." *Id.*
>
> Every value furthered by the Fourth Amendment remains intact
> if a proper warrant for the search of a single residence also
> permits a search of the yard or curtilage at the designated

address. The proper procedures to invoke judicial supervision have been followed, and a proper justification for the intrusion has been established. The only issue is whether a warrant is overbroad in its geographic scope or intentionally restricted to a house itself. Neither is true here, given the designation of the property to be searched as a "residence" at a single specified address.

Finally, the authorities seem unanimous in permitting similar searches. "Curtilage" originally appears to have meant the area within a fence surrounding a structure, but is now used in this context without regard to whether what is usually termed the "yard" is fenced or not. *See, e.g., United States v. Brown*, 822 F. Supp. 750, 754 (M.D. Ga. 1993), *aff'd*, 50 F.3d 1037 (11th Cir. 1995) (table) ("The search warrant in this case authorized intrusion into the area of highest expectation of privacy. It seems logical and reasonable that a search warrant that authorizes intrusion on this greater area of privacy would include authorization for intrusion in the lesser area of privacy, the backyard."); *Barton v. State*, 161 Ga. App. 591, 288 S.E.2d 914, 915 (1982) (observing that "'[p]remises' contemplates the entire living area used by occupant" and upholding search of a shed twenty feet behind the house); *State v. Basurto*, 15 Kan. App. 2d 264, 807 P.2d 162, 165 (1991), *aff'd*, 249 Kan. 584, 821 P.2d 327 (1991) (upholding search of a shed in the backyard of a residence, observing "[t]here appears to be little doubt that a search warrant which describes only the residence of a defendant will authorize the search of any vehicles or buildings within the 'curtilage' of that residence"); *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421, 425-26 (1980) (upholding search of calf shed located on the other side of a chain link fence and 100 feet from residence); *State v. Trapper*, 48 N.C. App. 481, 269 S.E.2d 680, 684 (1980) (holding that a warrant for search of house trailer also permitted search of tin shed approximately thirty feet from trailer); *State v. Stewart*, 129 Vt. 175, 274 A.2d 500, 502 (1971) (upholding search of a tree located in the backyard of a residence).

> Like the barn, garage, shed, and tree in the cited cases, Sowers'
> tent was a structure within the curtilage of a dwelling for which
> the police secured a valid search warrant. As a result, when
> police obtained a valid warrant to search the residence at 801
> West Neely Street, they were also authorized to search the tent in
> the backyard of the residence. The search of Sowers' tent and the
> seizure of items found in the tent did not violate the Fourth
> Amendment under these curtilage cases. We see no reason to
> disagree with these authorities and find no defect in a search that
> was properly authorized. Indeed, a police officer specifically
> advised the issuing judicial official that Sowers was in a tent in
> the backyard of the residence.

*Id.* at 590-591.

[16] Hardin concedes that "[a] proper warrant for search of a single residence also allows a search of the yard or curtilage of the designated address" and that "the front porch, side garden, or yard, or a driveway is an area properly considered as part of curtilage." Appellant's Brief at 10-11. Hardin does not challenge the trial court's finding that he parked his vehicle within the curtilage.[1] Rather, he appears to focus his argument on the idea that the search warrant did not explicitly list the vehicle.

---

[1] Without citation to the record, Hardin asserts that "the vehicle was not on the premises during the execution of the Search Warrant" and that "Hardin was not near the vehicle when he drove it up." Appellant's Brief at 14. Hardin does not develop a cogent argument regarding these assertions. Further, he asserts that the automobile exception does not apply and cites *Collins v. Virginia*, 138 S. Ct. 1663 (2018). In *Collins*, the Supreme Court addressed "whether the automobile exception justifies the invasion of the curtilage" and declined "Virginia's invitation to extend the automobile exception to permit a warrantless intrusion on a home or its curtilage." 138 S. Ct. at 1671, 1673.

[17] While Hardin asserts that Indiana courts have not considered the question of whether a vehicle located on the premises falls within the scope of a search warrant when the vehicle is not mentioned in the warrant, the State points to *State v. Lucas*, 112 N.E.3d 726 (Ind. Ct. App. 2018). In *Lucas*, Lafayette Police Sergeant Matthew Gard obtained a search warrant for Lucas's home which provided for a search of the home with an attached two car garage for evidence relating to an assault and/or theft. 112 N.E.3d at 728. During the execution of the warrant, Sergeant Gard found a black vehicle in the garage, looked inside, saw a large mound in the back seat which had been covered by a blanket, reached inside a partially opened window, and moved the blanket to reveal a large paper bag containing what Sergeant Gard suspected was synthetic marijuana. *Id.* The trial court granted Lucas's motion to suppress, ruling in relevant part "that the officer's entry into the vehicle and moving of the blanket exceeded the scope of the warrant and all evidence seized as a result of said action is suppressed." *Id.* at 729.

[18] On appeal, we observed that it appeared that Indiana state courts had not decided the precise issue of whether the Fourth Amendment permits an officer who has procured a search warrant for a home and garage to also search any vehicles found on the premises. *Id.* at 730. We noted that the Seventh Circuit had held that, "while a vehicle is less fixed than a closet or cabinet, it is 'no less fixed than a suitcase or handbag found on the premises, both of which can readily be searched under *Ross* if capable of containing the object of the search." *Id.* (quoting *United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985)). We

stated that, "[o]bserving the trend in other jurisdictions upholding such searches, the *Percival* court held that 'a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises.'" *Id.* (quoting *Percival*, 756 F.2d at 612). We observed that *Percival* has subsequently enjoyed support in our federal circuit and district courts. *Id.* (citing *United State v. Evans*, 92 F.3d 540, 543 (7th Cir. 1996) (search of trunk of vehicle in attached garage pursuant to warrant for house "with detached garage"), *cert. denied* 519 U.S. 1020, 117 S. Ct. 537 (1996); *United States v. Rivera*, 738 F. Supp. 1208, 1218 (N.D. Ind. 1990) (search of truck in driveway pursuant to warrant for home's premises)). We acknowledged that Hoosiers have a heightened expectation of privacy in their vehicles, but found the reasoning of the Seventh Circuit in *Percival* to be persuasive and held that, under the Fourth Amendment, a search warrant authorizing a search of a particularly described premises permits the search of vehicles owned or controlled by the owner of, and found on, the premises. *Id.*

[19] In light of the foregoing, we conclude that the search of Hardin's vehicle did not violate the Fourth Amendment. *See Rivera*, 738 F. Supp. at 1218 (holding that, "[w]hile the better practice would have been to include a description of the defendant's vehicle in the warrant, such a practice is not mandated in every instance by the fourth amendment" and that the search of the defendant's truck in the driveway was within the scope of the search warrant issued for his premises); *see also* WAYNE R. LAFAVE, 2 SEARCH & SEIZURE § 4.10(c) (5th ed.) ("Ordinarily, a description in a warrant of a dwelling at a certain place is taken

to include the area within the curtilage of that dwelling, so that it would cover a vehicle parked in the driveway rather than the garage.").[2]

B. *Article 1, Section 11*

[20] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[21] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). Generally, "[w]e consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the

---

[2] To the extent Hardin cites *State v. Gosch*, 339 P.3d 1207 (Idaho Ct. App. 2014), *review denied*, we find that case distinguishable. Unlike in the present case, there was no finding by the trial court in *Gosch* that the vehicle which was searched was within the curtilage of the residence. The court in *Gosch* ultimately concluded that the vehicle in that case was properly searched under the automobile exception to the warrant requirement. *See* 339 P.3d at 1212-1213.

extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[22] As for the degree of concern, suspicion, or knowledge that a violation had occurred, the record reveals that officers had conducted surveillance of Hardin and Hall and had information that Hardin was dealing methamphetamine. Regarding the degree of intrusion, Hardin was under arrest and officers had a search warrant and searched his vehicle which was parked in his driveway. With respect to the extent of law enforcement needs, the record reveals that law enforcement gathered information that Hardin was dealing methamphetamine and involved in the finance and delivery of methamphetamine in Morgan County and surrounding counties. Under the totality of the circumstances, we conclude that the search of the vehicle was reasonable and did not violate Article 1, Section 11 of the Indiana Constitution.

## *Conclusion*

[23] For the foregoing reasons, we affirm Hardin's conviction.

[24] Affirmed.

May, J., concurs.

Mathias, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian E. Hardin,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | Court of Appeals Case No.<br>18A-CR-2629 |

**Mathias, Judge, dissenting.**

Because I believe that the police search of Hardin's automobile was improper under both the Fourth Amendment and Article 1, Section 11, I respectfully dissent.

Interpreting the Fourth Amendment, the United States Supreme Court has held that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820–21 (1982). This is only common sense. The police should not be required to obtain a separate warrant to open a chest found inside the home for which they have already obtained a search warrant.

And in *Sowers v. State*, 724 N.E.2d 588, 590 (Ind. 2000), our supreme court noted that "'[e]very published opinion addressing the issue has concluded that a warrant authorizing the search of a residence automatically authorizes a search of the residence's curtilage.'" (quoting *United States v. Gorman*, 104 F.3d 272, 275 (9th Cir. 1996)). As the Ninth Circuit put it:

> If a search warrant specifying only the residence permits the search of 'closets, chests, drawers, and containers' therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence . . . .

*Gorman*, 104 F.3d at 275 (quoted in *Sowers*, 724 N.E.2d at 590). Following this reasoning, our supreme court in *Sowers* held that a warrant authorizing the search of a specific residence also authorized the search of a tent located in the backyard:

> Like [a] barn, garage, shed, and tree . . . , Sowers' tent was a structure within the curtilage of a dwelling for which the police secured a valid search warrant. As a result, when police obtained a valid warrant to search the residence . . . , they were also authorized to search the tent in the backyard of the residence.

*Sowers*, 724 N.E.2d at 591. But our supreme court has never extended this to include the search of an automobile located on the premises of the residence authorized to be searched.

[28] A panel of this court took that step in *State v. Lucas*, 112 N.E.3d 726, 730 (Ind. Ct. App. 2018), which held that "a search warrant authorizing a search of a

particularly described premises permits the search of vehicles owned or controlled by the owner of, and found on, the premises." I believe this is a step too far, at least under the circumstances of the present case.

[29] As stated by Professor LaFave, the analogy between an automobile and other chattel located on a premises is "less than perfect." Wayne R. LaFave, Search & Seizure § 4.10(c) (Update 2018).

> Certainly a vehicle, even one parked in a garage, has a lesser connection with the premises than "desks, cabinets, closets and similar items," and thus one might question whether a showing of probable cause as to certain premises should inevitably be deemed to cover a vehicle (even of the occupant) that happens to be parked on the property at the time the warrant is served. . . . Moreover, it must be remembered that the Fourth Amendment requirement of particularity varies to some degree by what is reasonably practicable. A requirement that warrants for premises describe not only the premises generally but every conceivable hiding place therein would impose an intolerable burden; by comparison, *it would seem relatively easy to include a description of the occupant's vehicle in the warrant if the warrant were intended to extend to the car*.

*Id*. (emphasis added) (footnotes omitted). I too believe that, if the police wish to search a vehicle located on a residence, they should simply include this request in the application for a search warrant. This is not an unreasonable burden.

[30] More importantly, I believe that the search of Hardin's automobile was unreasonable under Article 1, Section 11 of the Indiana Constitution. As acknowledged by the majority, Indiana courts interpret Article 1, Section 11

independently from the Fourth Amendment, despite their textual similarities. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). Under Article 1, Section 11, the State must show that the police conduct was reasonable under the totality of the circumstances. *Id*. Our supreme court has directed us to consider three factors when determining whether the police conduct was reasonable: (1) the degree of concern, suspicion, or knowledge that a violation occurred; (2) the degree of intrusion the method of search or seizure imposes on the ordinary activities of the subject of the search; and (3) the extent of law enforcement needs. *Id*.

[31]     Here, I agree with the majority that the first factor weighs in favor of reasonableness. The police had strong evidence that Hardin was dealing in methamphetamine. However, with regard to the second factor, the degree of intrusion is relatively high. Although Hardin was already in custody, the police fully searched his automobile. As our supreme court has stated before: "'Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion[.]'" *Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005) (quoting *Brown v. State*, 653 N.E.2d 77, 80 (Ind. 1995)). The search of an automobile based on a warrant that makes no mention of the curtilage, much less of an automobile parked on the curtilage, constitutes a high degree of intrusion. Lastly, with regard to the needs of law enforcement, I disagree with my colleagues and believe that this factor weighs heavily against a finding of reasonableness. I acknowledge that the police had information that Hardin was involved with the delivery and the financing of delivery of methamphetamine in

Morgan and surrounding counties. But at the time of the search of the vehicle, Hardin was already in custody, and the police had gathered enough evidence to obtain a search warrant. It would have been a minimal burden for the police to have secured the car and quickly obtained a warrant to search the vehicle.

[32] In short, I am of the opinion that the police acted unreasonably by searching Hardin's vehicle simply because he drove it into the driveway of his home while a search warrant was being executed at the home, especially when he was immediately taken into custody. It would have been simple for the police to have obtained another warrant authorizing the search of the vehicle. But they did not, and I honor the distinction between homes and motor vehicles for purposes of search and seizure. I therefore believe that the search of the vehicle was unreasonable and therefore contrary to Article 1, Section 11 of the Indiana Constitution. And I respectfully dissent from the majority's holding otherwise.