## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2019, 6:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Amy Ravellette,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 31, 2019

Court of Appeals Case No.
19A-CR-296

Appeal from the Vigo Circuit Court

The Honorable John T. Roach, Judge

Trial Court Cause No.
84D01-1803-F4-803

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Amy Ravellette was convicted of possession of methamphetamine, a Level 5 felony. The trial court sentenced Ravellette to four years in the Indiana Department of Correction ("DOC"), with two years to be served through Vigo County Community Corrections on work release and two years suspended to probation. Ravellette appeals, raising two issues for our review: 1) whether a warrantless search by police officers violated Ravellette's rights under the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution, and 2) whether Ravellette was denied her right to a fair trial when the trial court removed her from the courtroom in the presence of the jury. Concluding the warrantless search did not violate either constitutional provision, and Ravellette was not denied her right to a fair trial, we affirm.

# Facts and Procedural History[1]

[2] Late on the evening of March 9, 2018, Trooper Bradley Fyfe of the Indiana State Police and two Vigo County deputies responded to a call from dispatch regarding three females breaking and entering a trailer home in Vigo County. Upon arrival, they noticed a van parked on the curb "like it had been quickly pulled up in front of the trailer[.]" Pre-Trial Hearings and Jury Trial

---

[1] We note that the facts in this case are comprised of testimony from both the suppression hearing on September 28, and the jury trial on December 3, 2018.

("Transcript"), Volume 2 at 199. Trooper Fyfe exited his vehicle and walked toward the trailer and the van. Ravellette walked from the back of the trailer to the front with a crowbar in her hand. Trooper Fyfe recognized Ravellette from a prior incident. Moments later, two additional women "[came] out . . . around the . . . front side of the trailer." *Id.* at 200. Ravellette stated to Trooper Fyfe that she and the other two women were "checking to see if there was anybody there squatting." *Id.*

[3] While Ravellette spoke to the other deputies, Trooper Fyfe approached the van, and "since the call was for breaking and entering," *id.* at 42, he looked through the windows to "make sure there was nothing that was . . . stolen in the van or just see why it was parked like that," *id.* at 200. He started looking from the back passenger side window, where he observed "a lot of computers and electronic stuff . . . that [is] sometimes consistent with stuff that [is] stolen out of houses[.]" *Id.* at 201. Trooper Fyfe then looked through the front passenger window and observed the following items on the passenger seat in plain view: a purse that had been spilled over, a black electronic scale commonly associated with drug transactions, and a prescription bottle with no label that contained a mixture of pills of various colors and sizes, *see id.* at 44-45, that were "not consistent with something that's sent out by a pharmacy," *id.* at 202. After he saw these items, Trooper Fyfe asked, "whose [purse is] up front[?]" *Id.* Ravellette responded that it was hers.

[4] Once Trooper Fyfe discovered the prescription bottle, Ravellette "was no longer free to go," but this was not communicated to Ravellette. *Id.* at 52. Despite

Ravellette's warning not to, Trooper Fyfe opened the passenger door and proceeded to open the black electronic scale where he discovered a white powdery substance that field-tested positive for methamphetamine.[2] After receiving the positive result, Trooper Fyfe went back to the van and noticed a backpack between the captain-style seats. Because Trooper Fyfe "saw the meth[amphetamine] on the scale, [he] suspected there probably may be more meth[amphetamine] in the [van.]" *Id.* at 203. He then opened the backpack and found in a zippered compartment a baggy that contained what was later confirmed to be 9.94 grams of methamphetamine. Before he disclosed what he had found, Trooper Fyfe asked whose backpack it was and Ravellette "said it was hers."[3] *Id.* at 204. Ravellette was arrested following the search.

[5] The State charged Ravellette with possession of methamphetamine, a Level 5 felony; possession of paraphernalia, a Class C misdemeanor; and maintaining a common nuisance, a Level 6 felony. Ravellette filed a motion to suppress the evidence the officers seized during the search. She argued that all statements made and evidence found during the search should be suppressed because they were the product of an unlawful search, in violation of the state and federal

---

[2] Trooper Fyfe testified, "[t]he field test kit, I put a small sample in there, popped the vials that are in there, . . . and it turned purple which is . . . the positive test for meth[amphetamine]." *Id.* at 47.

[3] Until this point, Ravellette was not told she was under arrest, she had not been told that she could not leave, she was not placed in handcuffs, she was not restricted in any way, and no weapons were displayed. *See id.* at 59.

constitutions. Following a suppression hearing, the trial court denied Ravellette's motion.

[6] A jury trial commenced, and, over Ravellette's objection, the methamphetamine was admitted into evidence. Ravellette testified and, on direct examination, she denied that she told Trooper Fyfe that she owned the backpack and the black electronic scale. At the conclusion of brief questioning by her attorney, and without a question before her, Ravellette asked her counsel and the trial court to put certain evidence into the record:

> [Counsel]: That's all the questions that I have, Your Honor.
>
> [Ravellette]: Whoa, no. He says right here it did not test positive for meth. Can we please put [Trooper Fyfe's] deposition –
>
> [Counsel]: - There's no question before you. -
>
> [Ravellette]: - in. Can we please put his deposition in for evidence so that the jury can see it? –
>
> [Court]: - Ms. Ravellette -
>
> [Ravellette]: - Please -
>
> [Court]: - Ms. Ravellette -
>
> [Ravellette]: - Or the police report –
>
> [Court]: - Ms. Ravellette, we're not going to put all that paper into evidence -

[Ravellette]: - It's, it's evidence -

[Court]: - Ms. Ravellette, now is your opportunity to testify -

[Ravellette]: - That's what I'm trying to do –

[Court]: - You can't testify as to what somebody said in those papers -

[Ravellette]: - This is his sworn deposition –

[Court]: - Now's –

[Ravellette]: - He states –

[Court]: - Ms. Ravellette, listen to me –

[Ravellette]: - He states I came out of the trailer –

[Court]: - Ms. Ravellette, stop, stop -

[Ravellette]: - Because I came out of the trailer –

[Court]: - Talking -

[Ravellette]: - He was in Genevieve's van –

[Court]: - Please. Stop talking –

[Ravellette]: - It's not even my van. I was arrested for something I didn't –

[Court]: - Ms. Ravellette, I'm going to –

[Ravellette]: - I did not possess –

[Court]: - Ms. Ravellette, I'm going to ask you to stop -

[Ravellette]: - I wasn't around. I wasn't around it. I didn't. It doesn't even belong to me, I was called down there –

[Court]: - You can take her out -

*Id.* at 234-36.

[7]   In the presence of the jury, the trial court directed deputies to remove Ravellette from the courtroom. After Ravellette's removal, the trial court excused the jury and asked deputies to return Ravellette to the courtroom. Once Ravellette was back in courtroom, the trial court reminded her that outbursts in the courtroom were unacceptable. Ravellette indicated that she understood. Ravellette did not object to the jury being present during her removal and she did not request the jury be admonished. When the jury returned to the courtroom, the trial court did not sua sponte admonish the jury, and the trial continued.

[8]   The jury found Ravellette guilty of possession of methamphetamine.[4] The trial court sentenced Ravellette to the DOC for four years. Ravellette now appeals.

---

[4] The jury found Ravellette not guilty of maintaining a common nuisance and possession of paraphernalia.

# Discussion and Decision

## I. Unreasonable Search and Seizure

### A. Standard of Review

Ravellette challenges the legality of the warrantless search of the van under both the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. Although Ravellette argues the trial court erred in denying her motion to suppress, she did not file an interlocutory appeal of the denial of her motion to suppress. In cases such as this one, where evidence is admitted over objection at trial, the issue is whether the trial court abused its discretion in admitting the evidence at trial. *See Kyles v. State*, 888 N.E.2d 809, 812 (Ind. Ct. App. 2008). We will reverse an evidentiary ruling if the trial court abused its discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*. In making this determination, we will not reweigh the evidence and will consider conflicting evidence in a light most favorable to the trial court's ruling. *Id*. We consider evidence from both the trial and the suppression hearing, so long as evidence from the suppression hearing does not directly contradict trial evidence. *Montgomery v. State*, 904 N.E.2d 374, 377 (Ind. Ct. App. 2009), *trans. denied*. The ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo. *Hardin v. State*, 124 N.E.3d 117, 120 (Ind. Ct. App. 2019).

# B. Fourth Amendment

[10] Ravellette contends the search of the van violated the Fourth Amendment to the United States Constitution, which provides in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). For a search to be reasonable under the Fourth Amendment, a warrant is required, *id.*, and if a search is conducted without a warrant, the State bears the burden to show that one of the "well-delineated exceptions" to the warrant requirement applies, *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016).

[11] The State contends that the automobile exception applies to the facts of this case. We agree. The automobile exception is a well-recognized exception to the warrant requirement. *Meister v. State*, 933 N.E.2d 875, 878 (Ind. 2010). A search of an automobile falls within this exception when the vehicle is readily mobile and probable cause exists to believe it contains contraband or evidence of a crime. *Id.* at 878-79. When there is probable cause to search a vehicle, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been obtained. *Id.* at 879. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more.

*Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). In *Myers v. State*, our supreme court concluded:

> In light of the Supreme Court's recent emphatic statement in [*Maryland v. Dyson*, 527 U.S. 465 (1999)] that the automobile exception "does not have a separate exigency requirement," we conclude that this exception to the warrant requirement under the Fourth Amendment does not require any additional consideration of the likelihood, under the circumstances, of a vehicle being driven away. Rather, we understand the "ready mobility" requirement of the automobile exception to mean that all operational, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present.

839 N.E.2d 1146, 1152 (Ind. 2005) (some internal citations omitted). Therefore, the van in the instant case was readily mobile regardless of whether it may have been temporarily stopped at the trailer home or confined by the officers that were on the scene.

[12]  Furthermore, we conclude that Trooper Fyfe had probable cause to believe the van contained evidence of a crime. The record shows that Trooper Fyfe arrived at the scene and noticed the awkwardly parked van and Ravellette coming from the back of the trailer with a crowbar in her hand. When Trooper Fyfe looked through the windows of the van, he noticed the following: computers and other electronics that were consistent with things that are often stolen out of houses, an unlabeled prescription medication bottle that contained pills of different sizes and colors, and an electronic scale of the kind commonly associated with drugs.

It is this specific evidence that raised Trooper Fyfe's suspicion that the van might contain evidence of a crime because the call was for breaking and entering. This prompted him to investigate further and ultimately discover evidence of drugs, including a backpack that contained a baggy of 9.94 grams of methamphetamine. *Cf. Wilkinson v. State*, 70 N.E.3d 392, 404 (Ind. Ct. App. 2017) (holding that once officers observed items in plain view, they were permitted to search any items in the vehicle that might conceal controlled substances). The ready mobility of the van coupled with circumstances providing probable cause that it contained evidence of a crime therefore allowed the warrantless search under the automobile exception, and Ravellette has not established that the search of the van violated the Fourth Amendment.

## C. Article 1, Section 11

Ravellette also argues that the warrantless search of the van violated her rights under Article 1, section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Although the text of this section of the Indiana Constitution mirrors that of the Fourth Amendment to the United States Constitution, we interpret Article 1, section 11 separately and independently. *State v. Washington,* 898 N.E.2d 1200, 1205-06 (Ind. 2008). When the defendant makes a section 11 argument, the

State carries the burden to show that the police conduct was "reasonable under the totality of the circumstances." *Id*. at 1206. When determining the reasonableness of a search or seizure, we evaluate the following factors: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). Based on the totality of the circumstances, we conclude this search was reasonable.

[15]     As for the first factor, Trooper Fyfe had a high degree of concern that a crime was being committed. Trooper Fyfe responded to a call regarding women breaking and entering a trailer. When Trooper Fyfe arrived, he noticed a van that was parked awkwardly. Ravellette then walked from the back of the trailer with a crowbar in her hand. Trooper Fyfe approached the van and observed inside computers, other electronics, an unlabeled prescription medication bottle with various pills inside, and a black electronic scale. This evidence is sufficient to give rise to reasonable suspicion that a crime had occurred, and further investigation was warranted. Regarding the second factor, Trooper Fyfe's initial intrusion into the vehicle was minimal. Ravellette's only argument is that the degree of intrusion was substantial because she clearly told Trooper Fyfe not to enter the unlocked van. But the evidence is unclear as to whether Ravellette is the actual owner of the van. Furthermore, after Trooper Fyfe questioned Ravellette, he walked up to the van and, while looking through the windows, observed items in the van that are often stolen from homes. Because the nature

of the call was breaking and entering, observing these items certainly raised Trooper Fyfe's suspicion that a crime had occurred. Although Ravellette was not free to leave during the search, she was not under arrest or detained until Trooper Fyfe discovered the 9.94 grams of methamphetamine. Under the third factor, the need of law enforcement was high because officers have a strong interest in preventing the accessibility of illegal drugs whether in an automobile, a home, or in the possession of a person. In addition, a search was necessary for law enforcement to ensure that evidence would not be removed or destroyed, especially when Trooper Fyfe suspected that the van contained evidence of stolen property. Considering all three factors, we conclude that Trooper Fyfe's search was reasonable under the totality of the circumstances and did not violate Article 1, section 11 of the Indiana Constitution. *See Washington,* 898 N.E.2d at 1205.

[16] In sum, because the evidence shows a warrantless search of the van was justified under both constitutional provisions, the trial court did not abuse its discretion in admitting the challenged evidence.

## II. Fair Trial

[17] Ravellette next argues that her removal from the courtroom in the presence of the jury following her outburst, without an admonishment to the jury from the court, denied her the right to a fair trial. As a preliminary matter, Ravellette failed to preserve this issue for our review because she neither objected to her removal in the presence of the jury at the time nor requested an admonishment

or a limiting instruction be given to the jury. Our courts have long held that "[w]here a defendant fails to object or otherwise challenge a trial judge's [actions], any alleged error is waived on appeal." *Garrett v. State*, 737 N.E.2d 388, 391 (Ind. 2000). Therefore, Ravellette waived this issue for appeal. However, our analysis does not stop there because Ravellette claims, however briefly, that the error was fundamental. Our supreme court has explained:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (internal quotation marks and citations omitted).

[18]    Ravellette has not shown how she was prejudiced by her removal from the courtroom in the presence of the jury. Neither has she shown that her removal constituted a clearly blatant violation of basic and elementary principles, and the harm or potential for harm was substantial. *See id*. Ravellette asserts that she was prejudiced by the scolding by the judge for her outburst and her subsequent removal from the courtroom. However, we disagree. Ravellette chose to act as she did after having been warned by the trial judge prior to the commencement

of trial that outbursts would not be tolerated. *See* Tr., Vol. 2 at 74-76. Ravellette's removal was solely because of her own actions.

[19] We also disagree with Ravellette's assertion that the State suggested to the jury that her testimony was less credible or trustworthy due to her outburst. During the State's closing argument to the jury, it stated, "you have to judge the credibility of the witnesses . . . you had the opportunity to observe Ms. Ravellette, so you will need to make that determination." *Id*. at 250. Based on our review of the record, the State only reminded the jury of its responsibility to judge the credibility of the witnesses, which it was permitted to do. Therefore, we conclude no fundamental error occurred.

[20] Ravellette has failed to demonstrate her removal by the trial court, in the presence of the jury, denied her a fair trial.

# Conclusion

[21] For the reasons set forth above, the warrantless search by Trooper Fyfe did not violate Ravellette's rights under the Fourth Amendment to the United States Constitution or Article 1, section 11 of the Indiana Constitution. Also, Ravellette was not denied a fair trial when she was removed from the courtroom in the presence of the jury. We therefore affirm Ravellette's conviction.

[22] Affirmed.

Mathias, J., and Pyle, J., concur.